IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHELBY WILSON,**<br><br>**PLAINTIFF,**<br><br>**v.**<br><br>**INDUSTRIAL COMMERCIAL**<br>**CLEANING GROUP, INC.,**<br><br>**DEFENDANT.** | **Civil Action No. _____**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

Plaintiff Shelby Wilson, by and through her undersigned attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1.      This is an action for an award of damages, punitive damages, and other relief on behalf of Plaintiff Shelby Wilson (hereinafter "Ms. Wilson" or "Plaintiff"), a former employee of Industrial Commercial Cleaning Group, Inc. (hereinafter "ICCG," the "Company" or "Defendant").  Ms. Wilson has been harmed by the Defendant's discrimination and harassment on the basis of her sex and disability or perceived disability, and by Defendant's retaliation for Ms. Wilson's repeated complaints about discrimination and harassment, retaliation for Ms. Wilson's refusal to give in to her supervisor's sexual advances, retaliation for seeking accommodations for her disability and/or perceived disability, and termination as a result of discrimination and retaliation.  Additionally, ICCG failed and refused to engage in a good faith, interactive process with respect to accommodating Ms. Wilson's disability.

2.      This action arises under Title VII of the Civil Rights Act of 1964, as amended by the Civil

Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. ("Title VII") and the Americans with Disabilities

Act, 42 U.S.C. § 12101, et seq. ("ADA").

## JURISDICTIONAL STATEMENT

3.      This Court has original jurisdiction of all civil actions arising under the Constitution, laws,

or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4.      The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants

the District Court original jurisdiction in any civil action authorized by law to be commenced by

any person to recover damages to secure equitable or other relief under any act of Congress

providing for the protection of civil rights.

5.      This Court has supplemental jurisdiction over any Pennsylvania state law claims alleged

herein pursuant to 28 U.S.C. § 1367.

6.      All conditions precedent to the institution of this suit have been fulfilled. On May 30, 2018,

Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment

Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania

Human Relations Commission ("PHRC").  On February 21, 2019, the EEOC issued a Notice of

Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of

said Notice.[1]

---

[1] It has been less than one year since Ms. Wilson requested that her Charge of Discrimination be
dual-filed as a Complaint with the Pennsylvania Human Relations Commission for Defendant's
violations of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").  Ms.
Wilson will seek to amend her Complaint in this matter to add her PHRA claims once she has
exhausted her administrative remedy with respect to those claims.

## VENUE

7.     This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8.     This action properly lies in the Eastern District of Pennsylvania because significant activities associated with the claims alleged took place in this judicial district, Plaintiff performed her work for Defendant in this judicial district, Plaintiff was terminated in this judicial district, and the claims arose in this judicial district.

## PARTIES

9.     Plaintiff Shelby Wilson is an adult female citizen and resident of Philadelphia, Pennsylvania and the United States of America.

10.     Defendant Industrial Commercial Cleaning Group, Inc. is a Pennsylvania corporation with a corporate office located at 14 S. Burnt Mill Road, Voorhees, New Jersey  08043 and a field office located at 5319 Wissahickon Avenue, Philadelphia, PA  19144.

11.     Defendant does significant business within the Commonwealth of Pennsylvania.

12.     At all relevant times, employees of Defendant ICCG acted as agents and servants for Defendant.

13.     At all relevant times, employees of Defendant ICCG were acting within the scope of their authority and in the course of employment under the direct control of Defendant.

14.     At all times material hereto, Defendant ICCG acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant ICCG and in furtherance of Defendant ICCG's business.

15.     This cause of action arose out of transactions or occurrences that took place in whole or in part in Philadelphia, Pennsylvania. Defendant conducts substantial business within Philadelphia, Pennsylvania.

16.     This Honorable Court has personal jurisdiction over the Defendant.

## **FACTS**

17.     Ms. Wilson was hired by the Company in or about July of 2017 as a Laborer out of its Philadelphia field office location.

18.     As a Laborer for ICCG, Ms. Wilson handled, among other things, trash and debris removal, and directing traffic and flagging.

19.     While employed by the Company, Ms. Wilson was a hardworking and dedicated employee who performed her duties in a competent, efficient and satisfactory manner.

20.     Ms. Wilson has a respiratory condition, a disability, that causes her to suffer severe respiratory issues when exposed to high levels of pollen and mold, and/or while working in certain outdoor conditions such as woods and brush.

21.     Beginning in the Fall of 2017, the Company instructed Ms. Wilson to work in conditions, such as woods and brush, that negatively affected her disability and medical condition. For over 6 (six) months, each time Ms. Wilson was required to work in such conditions, she requested that the Company provide her safety equipment for her personal health and safety, including a mask or respirator and coveralls.

22.     ICCG failed and/or refused to provide any of the safety equipment requested by Ms. Wilson. Nor did ICCG engage in any good faith, interactive process with respect to accommodating Ms. Wilson's disability.

23.     In late 2017 or early 2018, Ms. Wilson was hospitalized with respiratory issues due to working in the unsafe conditions about which she had previously requested safety equipment.

24.     Ms. Wilson informed the Company about her hospitalization for her respiratory condition.

25.     During the week of July 23, 2018, subsequent to her hospitalization, the Company directed Ms. Wilson to work in the conditions for which she had requested accommodations.

26.     Again, Ms. Wilson requested the safety equipment as an accommodation for her disability, but again, the Company failed and/or refused to provide any safety equipment or any other reasonable accommodation for Ms. Wilson's medical condition and disability.

27.     In addition to discriminating against Ms. Wilson on the basis of her disability or perceived disability, Ms. Wilson was subjected to constant egregious sexual harassment by her supervisor throughout her employment at the Company.

28.     After reporting the offensive and inappropriate harassment, Ms. Wilson was subjected to clear and immediate retaliation for reporting the behavior.

29.     Upon being hired by the Company, Ms. Wilson was supervised by Kevin Nicholson.

30.     From the beginning of her employment, Mr. Nicholson frequently made vulgar, inappropriate, offensive and graphic sexual comments to Ms. Wilson at work. Such comments by Mr. Nicholson directed to Ms. Wilson included, but were not limited to:

   a.   "Do you shave your p*ssy?"

   b.   "Do you like it to be licked?"

   c.   "How do you and your girlfriend have sex?"

   d.   "What positions do you and your girlfriend use?"

   e.   "Do you and your girlfriend use toys?"

   f.   "Did you ever mess with men before?"

g.   "Do you like big d*cks?"

h.   "Can you take a d*ck?"

i.   "How do you like your p*ssy ate?"

31.    Mr. Nicholson also made other inappropriate and unsolicited comments to Ms. Wilson based on her looks, such as:

a.   "You're a pretty little girl;" and

b.   "You sexy little thing."

32.    Mr. Nicholson also made vulgar and obscene gestures, such as grabbing his crotch while asking Ms. Wilson, "Do you think you could take this horse?"

33.    Ms. Wilson repeatedly informed Mr. Nicholson that she objected to his offensive and inappropriate comments, specifically stating that, "I don't like you talking to me like that. It makes me feel uncomfortable."

34.    Despite her clear objections, the comments and conduct continued unabated.

35.    In addition to subjecting Ms. Wilson to sexual harassment and discrimination, Mr. Nicholson repeatedly made graphic and sexually inappropriate comments about others that created a sexually hostile work environment in the workplace.

36.    More specifically, Mr. Nicholson frequently made sexually explicit comments about females he saw at work.

37.    For example, on one occasion, when Ms. Wilson and Mr. Nicholson were working near a group of young schoolgirls, Mr. Nicholson commented, "I know they're ready to suck some d*ck."

38.    On another occasion, someone called in about some children throwing rocks. When Ms. Wilson and Mr. Nicholson saw them, Mr. Nicholson chased the children away. Upon his return, Ms. Wilson inquired what happened.  Mr. Nicholson responded, "I'm gonna f*ck them."  Ms.

Wilson attempted to clarify his response, stating, "Do you mean that you're going to f*ck them up?"  Mr. Nicholson responded, "No, I'm gonna f*ck them in their asses and send them home naked to their parents.  I hope they go to prison and get raped, like when I was in prison."

39.     In October of 2017, Mr. Nicholson called Ms. Wilson's personal cell phone and asked her out.

40.     Ms. Wilson rejected Mr. Nicholson's advances, stating "I don't think of you like that."

41.     Immediately after her rejection, Mr. Nicholson retaliated against Ms. Wilson by treating her poorly at work and overly scrutinizing her job performance, in addition to continuing his pattern of vulgar and inappropriate comments and conduct.

42.     Because Mr. Nicholson continued to sexually harass Ms. Wilson, and retaliate against her for rejecting him, Ms. Wilson complained about the discrimination, harassment and hostile work environment caused by Mr. Nicholson to the Company's District Manager Butch Lewis.

43.     The harassment stopped briefly but, unfortunately, after approximately two weeks, Mr. Nicholson resumed making inappropriate comments and acting inappropriately in the workplace toward Ms. Wilson.

44.     Ms. Wilson thereafter submitted several additional complaints to Mr. Lewis and ICCG, but Mr. Nicholson's discrimination, harassment and retaliation continued.

45.     In addition, due to her complaints, Ms. Wilson began receiving threats of physical violence from Mr. Nicholson's girlfriend.

46.     On January 15, 2018, shortly after her most recent complaints, despite having never been written up or disciplined in any way, Ms. Wilson was informed that she was being suspended for three days.

47.     Ms. Wilson's suspension from ICCG was based on false, retaliatory reports by Mr. Nicholson regarding Ms. Wilson's job performance.

48.     On January 19, 2018, Ms. Wilson met with Company Consultant Ed Jordan, CEO and President Kim Jordan, Mr. Lewis and Mr. Nicholson.

49.     At this meeting, Ms. Wilson again complained about discrimination, harassment and retaliation.

50.     In response to Ms. Wilson's reports of discrimination, harassment and retaliation, the Company failed and/or refused to appropriately address and resolve Ms. Wilson's concerns.

51.     Notably, ICCG did not demote or reprimand Ms. Wilson's harasser, Mr. Nicholson, in any way.

52.     Instead, ICCG retaliated by transferring Ms. Wilson to an unfavorable and objectionable position on Mr. Lewis' line.

53.     Prior to her transfer, Ms. Wilson's hours were 7:30 a.m. to 4:00 p.m. She had been given several overtime shifts and was paid time and a half for such overtime work.

54.     Following her transfer, Ms. Wilson was forced to work the hours of 4:00 a.m. to 12:00 p.m. and she was no longer given the opportunity to work any overtime shifts.

55.     In addition, despite her objections, Ms. Wilson was told that she would now be paid under the table for her work.

56.     On April 17, 2018, Ms. Wilson complained, through counsel, about the discrimination, harassment and retaliation she had been subjected to by the Company.

57.     Again, ICCG retaliated against Ms. Wilson.  Shortly after receiving Ms. Wilson's written complaint, the Company suspended Ms. Wilson for two weeks without pay.

58.     The Company purported to suspend Ms. Wilson on the grounds that Ms. Wilson voluntarily drove her personal vehicle to job sites when directed not to do so.

59.     Ms. Wilson had not received any write ups or disciplinary notices regarding her use of her own car to go to work and it was only after she formally complained about discrimination, harassment and retaliation that this became an issue.

60.     After her unwarranted and unjustified suspension, Ms. Wilson was put back on her original line.  However, the Company failed and/or refused to pay Ms. Wilson for approximately two weeks of time that she has worked.

61.     Ms. Wilson also was still not permitted to work any overtime shifts.

62.     In addition, Ms. Wilson was now treated differently than her co-workers who had not raised issues or complaints of harassment or discrimination.

63.     For example, despite being written up for using her personal vehicle to get to job sites, Ms. Wilson was now required to use her personal vehicle to get to job sites, while other employees were not.

64.     On July 27, 2018, the Company informed Ms. Wilson that she was no longer permitted to work on a particular client's contract.

65.     Notably, the client had expressed concerns regarding Ms. Wilson's hesitation in working in the conditions which exacerbated her disability and medical condition, for which she had requested but had not received any accommodations.

66.     The Company informed Ms. Wilson that she would only be permitted to continue to work for the Company if she accepted an alternate role in one of two other locations.

67.     Both locations offered for Ms. Wilson's continued employment were located in Northern New Jersey, which would result in at least a two-hour commute each way, and were limited to weekend hours only.

68.     Neither of these options were a feasible or acceptable position for Ms. Wilson.

69.     On August 2, 2018, the Company terminated Ms. Wilson.

70.     Ms. Wilson has been discriminated against and harassed on the basis of her sex, and retaliated against because of her complaints and her refusal to give in to her supervisor's sexual advances, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

71.     Ms. Wilson has been discriminated against by Defendant and retaliated against for seeking accommodation of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

72.     ICCG has also violated the ADA by failing and refusing to engage in the requisite, good faith, interactive process with respect to accommodating Ms. Wilson's disability.

73.     Ms. Wilson has suffered and continues to suffer mental anguish and severe emotional distress as a proximate result of the actions and inactions of Defendant.

74.     Defendant ICCG's agents and employees acted with the intent of causing, or in reckless disregard of the probability, that their actions would cause Ms. Wilson severe emotional distress.

75.     Ms. Wilson has suffered financial losses including, among other things, lost wages, and an obligation for attorneys' fees and costs of bringing suit as a proximate result of the actions and inactions of Defendant.

## COUNT I
### Sex Discrimination, Harassment and Retaliation
### (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.)

76.     Plaintiff Shelby Wilson repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

77.     Based on the foregoing, Defendant engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

78.     In discriminating against, and harassing Ms. Wilson because of her sex, and retaliating against Ms. Wilson for her complaints about discrimination and harassment, and for her refusal to give in to the sexual advances of her supervisor, Mr. Nicholson, Defendant violated Title VII.

79.     Defendant's violations were intentional and willful.

80.     Defendant's violations warrant the imposition of punitive damages.

81.     As a direct result of the unlawful employment practices engaged in by Defendant, Plaintiff Shelby Wilson has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon.

## COUNT II
### Disability/Perceived Disability Discrimination, Harassment and Retaliation
### (The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.)

82.     Plaintiff Shelby Wilson repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

83.     Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

84.     In discriminating against and harassing Ms. Wilson on the basis of disability and/or because Defendant perceived Ms. Wilson to be disabled, and by retaliating against her for seeking accommodations of her disability, Defendant violated the ADA.

85.     In further violation of the ADA, Defendant failed and/or refused Ms. Wilson's requests for accommodation of her disability, failed to engage in a good faith, interactive process with respect to Ms. Wilson's requests for accommodation.

86.     Said violations were intentional and willful.

87.     Said violations warrant the imposition of punitive damages.

88.     As the direct and proximate result of Defendant's violations of the Americans with Disabilities Act, Plaintiff Shelby Wilson has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## PRAYER FOR RELIEF

89.     Plaintiff Shelby Wilson repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Shelby Wilson respectfully requests that this Court enter judgment in her favor and against Defendant, and Order:

a.   Appropriate equitable relief;

b.   Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment and retaliation;

c.   Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost due to Defendant's unlawful conduct;

d.  Defendant to pay Plaintiff punitive damages;

e.  Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f.  Defendant to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's reasonable attorneys' fees;

g.  Plaintiff be granted any and all other remedies available; and

h.  Such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Shelby Wilson hereby demands trial by jury as to all issues so triable.


By: _____
    Christopher A. Macey, Jr., Esquire
    Bell & Bell LLP
    1617 John F. Kennedy Boulevard
    Suite 1254
    Philadelphia, PA 19103
    (215) 569-2500

    *Attorneys for Plaintiff Shelby Wilson*

Dated: May 21, 2019